IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          CRIMINAL ACTION NO. 2:21-cr-00142

DAVID KEITH NUTTER,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendant's *Motion to Dismiss* (Document 45), the Defendant's *Supplement to Motion to Dismiss* (Document 48), and the *Response of the United States to Defendant's Motion to Dismiss* (Document 50). For the reasons stated herein, the Court finds that the motion should be denied.

**FACTS AND PROCEDURAL HISTORY**

The Defendant, David Keith Nutter, was charged with possession of firearms by a person previously convicted of misdemeanor crimes of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2), in an *Indictment* (Document 6) returned on August 11, 2021. The Indictment charges that, on or about July 6, 2019, Mr. Nutter possessed a Rexio, S.R.L., .22 caliber revolver; a Harrington and Richardson, 20-gauge shotgun; a Marlin, Model 25MN, .22 caliber rifle; and an Ithaca, 20-gauge shotgun. The Indictment further alleges that he had been previously convicted of the following misdemeanor crimes of domestic violence:

1

    a. Convicted on or about July 14, 1998, in the Canton Municipal Court, of Domestic Violence on a Family or Household Member, in violation of Ohio Rev. § 2919.25;

    b. Convicted on or about August 19, 2002, in the Court of Common Pleas of Start County, Ohio, of Domestic Violence on a Family or Household Member, Felony in the Fifth Degree,[1] in violation of Ohio Rev. § 2919.25(A); and

    c. Convicted on or about August 19, 2002, in the Court of Common Pleas of Stark County, Ohio, of Endangering Children (Child Abuse) in violation of Ohio Rev. § 2919.22(B)(1).

The Defendant appeared for a scheduled plea hearing on March 10, 2022. Prior to beginning the hearing, his counsel indicated that he wanted to investigate whether the prior convictions could support the § 922(g)(9) charge. The United States concurred in the request for a continuance, and the Court continued the matter. The Defendant filed the motion to dismiss on May 2, 2022, and the United States filed its response on May 13, 2022.

## DISCUSSION

Mr. Nutter concedes that the firearms were found in his home and that he sustained the convictions listed in the Indictment. He argues that "his prior convictions do not trigger criminal culpability under 18 U.S.C. §922(g)(9)." (Def.'s Mot. at 2–3.) He contends that Ohio Rev. § 2919.25(A) requires the state to "show only that a defendant knowingly caused or attempted to cause physical harm to a family or household member," and "the 'use or attempted use of physical

---

[1] A fifth-degree felony in Ohio is punishable by up to 12 months imprisonment and is thus treated as a misdemeanor for purposes of 18 U.S.C. §922. Although the Judgment Entry states that the offense is a fifth-degree felony, the Court notes that the version of Ohio Rev. Code § 2919.25 in effect at the time of Mr. Nutter's conviction appears to provide that violation of subsection A constitutes a first-degree misdemeanor, or, if the offender had previously been convicted of domestic violence, a fourth-degree felony. Ohio Rev. Code § 2919.25(D)(2)–(3) (Effective to April 6, 2009); R.C. PRE-7/1/96 § 2919.25(D).

force' was not an element of the offenses for which defendant was convicted," as required by the federal definition of a misdemeanor crime of domestic violence. (*Id.* at 3–4.) In addition, he argues that his civil rights were restored upon completion of his term of probation. Finally, Mr. Nutter contends that the permanent prohibition on firearm ownership is unconstitutional as applied to him.

The United States argues that the Indictment properly alleges all necessary elements of the charged offense. It contends that Supreme Court precedent confirms that statutory language like that used in Ohio Rev. § 2919.25(A) meets the definition of a misdemeanor crime of domestic violence contained in federal law. The United States further argues that the order relieving Mr. Nutter of the conditions of his "community control" sentence does not relieve him of the federal prohibition on owning a firearm due to the domestic violence conviction(s). It notes that Ohio law requires a person to "affirmatively apply to have their firearms disability relieved after their civil rights were taken away." (Govt. Resp. at 11.) Finally, the United States argues that the prohibition on firearms as applied to Mr. Nutter satisfies the intermediate scrutiny test established by the Fourth Circuit.

### A. Misdemeanor Crime of Domestic Violence

18 U.S.C. § 922(g)(9) prohibits a person "who has been convicted in any court of a misdemeanor crime of domestic violence" from possessing a firearm. A misdemeanor crime of domestic violence must have "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon…." 18 U.S.C. § 921(a)(33)(A)(ii). One of the Ohio statutes at issue here, Ohio Rev. Code § 2919.25(A), provides that "[n]o person shall knowingly cause or

attempt to cause physical harm to a family or household member."[2] Thus, the Court must determine whether knowingly causing or attempting to cause physical harm necessarily requires the use or attempted use of physical force.

The Supreme Court has addressed the scope of the definition of a misdemeanor crime of domestic violence, and relied on the common law definition of battery, which includes indirect application of force. *United States v. Castleman*, 572 U.S. 157, 170 (2014). In a subsequent case examining the purpose of §922(g)(9), the Supreme Court found that Congress intended to broadly bar "those domestic abusers convicted of garden-variety assault or battery misdemeanors—just like those convicted of felonies—from owning guns." *Voisine v. United States*, 579 U.S. 686, 695 (2016) (holding that the definition of misdemeanor crimes of domestic violence included the reckless infliction of bodily harm).

In *Castleman*, a defendant had been convicted of "intentionally or knowingly caus[ing] bodily injury" under a Tennessee domestic violence statute. 572 U.S. at 169. The Supreme Court found the analysis "straightforward," explaining that "Castleman pleaded guilty to having 'intentionally or knowingly cause[d] bodily injury' to the mother of his child…and the knowing or intentional causation of bodily injury necessarily involves the use of physical force." *Id*. The Court stated that "[i]t is impossible to cause bodily injury without applying force in the common-law sense." *Id.* at 170.

---

2 The Defendant raised a prior case in this district in which the United States agreed to dismiss a § 922(g)(9) prosecution involving another section of the same Ohio statute as a predicate offense. Ohio Rev. Code § 2919.25(C) provides that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." 18 U.S.C. §921(a)(33)(A)(ii) states that the predicate offense must have as an element "the use or attempted use of physical force, or the *threatened use of a deadly weapon*." (emphasis added.) The Ohio statute more broadly prohibits *threats of force* without limiting the threats to involve use of a deadly weapon. That prior case thus has no bearing on the analysis of whether "knowingly caus[ing] or attempt[ing] to cause physical harm constitutes the "use or attempted use of physical force."

4

The Court can discern no meaningful difference between Ohio's statute prohibiting knowingly causing or attempting to cause physical harm, and the Tennessee statute prohibiting intentionally or knowingly causing bodily injury analyzed by the Supreme Court in *Castleman*. Just as common-law force is necessary to cause bodily injury, it is necessary to cause physical harm. Thus, the motion to dismiss on the basis that Mr. Nutter's Ohio domestic violence conviction does not legally qualify as a "misdemeanor crime of domestic violence" under § 922(g)(9) should be denied.

### B. Restoration of Civil Rights

Mr. Nutter next contends that his civil rights were restored. The United States counters that he did not lose his civil rights (i.e., the right to vote, hold public office, and serve on a jury) as a result of his conviction, and therefore the restoration of civil rights is inapplicable.

The definition of a misdemeanor crime of domestic violence contained in 18 U.S.C. § 921(a)(33) specifies that:

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. §921(33)(B)(ii). The Sixth Circuit has found that the provisions in Ohio law that restore the rights to vote, serve on a jury, and seek and hold public office for many felons constitute "a 'restoration of civil rights' as contemplated by 18 U.S.C. § 921(a)(20)" for purposes of the federal firearms prohibition for felons. *United States v. Cassidy*, 899 F.2d 543, 549–50 (6th Cir. 1990). However, Ohio law continues to bar those convicted of many types of felony offenses

from possessing firearms, and so the Sixth Circuit reasoned that the express state restriction on possessing firearms meant the defendant remained prohibited under the definition contained in 18 U.S.C. § 921(a)(20). *Id.* (referencing Ohio Rev. Code § 2921.13, which prohibits firearm possession by, *inter alia*, those who have been convicted of "any felony offenses of violence" and "any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse").

Ohio law establishes a procedure for individuals prohibited from possessing firearms under Ohio law to seek relief from such prohibition. Ohio Rev. Code § 2923.14. However, Ohio's Supreme Court found the provision unavailable to a person convicted of violating § 2919.25(A), reasoning that he "was ineligible to have his firearms rights restored because he never lost those rights under Ohio law." *State ex rel. Suwalski v. Peeler*, 2021-Ohio-4061, 2021 WL 5364386 (Supreme Court of Ohio 2021) (finding that the Ohio "General Assembly did not indicate any intent to authorize courts to restore firearms rights lost by domestic-violence offenders under 18 U.S.C. § 922(g)(9)"). The Sixth Circuit noted that "[n]either civil rights restoration nor expungement is available [to a person convicted of violating Ohio Rev. Code § 2919.25(A)] under Ohio law." *Stimmel v. Sessions*, 879 F.3d 198, n. 7 (6th Cir. 2018) (rejecting a Second Amendment challenge to 18 U.S.C. 922(g)(9)'s prohibition on firearm ownership for a person convicted of violating Ohio Rev. § 2919.25(A)).

The Fourth Circuit has held that if a person's "civil rights were never taken away, it is impossible for those civil rights to have been 'restored.'" *United States v. Jennings*, 323 F.3d 263, 267 (4th Cir. 2003). The Court reasoned that an interpretation of 18 U.S.C. §921(a)(33)(B)(ii) that would permit all persons convicted of a misdemeanor crime of domestic

6

violence who did not lose civil rights to possess a firearm would "allow the restoration exception…to swallow the rule" and "undercut[] the federal policy aimed at trying to take firearms out of the hands of persons convicted of a [misdemeanor crime of domestic violence]." *Id*. at 274. Thus, because Mr. Nutter was convicted of misdemeanor offenses and/or sentenced only to community control without loss of civil rights, he did not lose civil rights such that they could be restored. Further, the Ohio Supreme Court and the Sixth Circuit have both specifically found that those convicted of violating Ohio Rev. Code § 2919.25(A) are properly prohibited from possessing firearms under 18 U.S.C. § 922(g)(9). Therefore, the motion to dismiss based on the asserted restoration of civil rights must be denied.

### C. Second Amendment

Finally, Mr. Nutter contends that his right to possess firearms is protected by the Second Amendment. He objects to the fact that, after the Supreme Court found an individual right to possess firearms for self-defense in *District of Columbia v. Heller*, 554 U.S. 570 (2008), "rather than apply strict scrutiny review" courts, including the Fourth Circuit, "borrowed a First Amendment intermediate scrutiny construct in order to maintain the status quo." (Def.'s Mot. at 5.) As a result, he argues, "as opposed to being a God given fundamental right to individual self-defense that requires a compelling state interest and narrowly tailored means to restrain like other fundamental individual rights, *Heller's* Second Amendment protections have been recast as only having a 'core' that applies to 'peaceful, law abiding citizens' (as determined by the State)." (*Id.*)

Of course, this Court is bound by the precedent to which the Defendant objects. The Fourth Circuit established a two-prong inquiry for post-*Heller* Second Amendment challenges. Courts first consider whether the challenged law regulates conduct within the scope of the Second

7

Amendment's protections, based on a historical inquiry. *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). If it does, an intermediate scrutiny analysis applies to determine the fit between the law and the governmental interest at stake. *Id.* at 682–83. The Fourth Circuit applied the intermediate scrutiny analysis to a similar challenge to § 922(g)(9) a year later. "Based upon § 922(g)(9)'s legislative history, the relevant case law, and common sense, we hold that the government has carried its burden of establishing that reducing domestic gun violence is a substantial government objective." *United States v. Staten*, 666 F.3d 154, 161 (4th Cir. 2011). After outlining extensive empirical and scholarly evidence regarding domestic violence, recidivism by those convicted of misdemeanor crimes of domestic violence, and increased risks posed when firearms are present in connection with domestic violence, the Fourth Circuit concluded that "[i]n accord with the unanimous view of our sister circuits who have addressed the issue…the fit here is, at least, reasonable." *Id.* at 167.

More recently, in considering a challenge to 18 U.S.C. § 922(g)(9), wherein the plaintiff argued that "he no longer should be subject to the prohibition [contained in Section 922(g)(9)] because he has demonstrated good behavior during the 27 years since his conviction [for a misdemeanor crime of domestic violence]," the Fourth Circuit "decline[d] to read into the statute an exception for good behavior or for the passage of time." *Harley v. Wilkinson*, 988 F.3d 766, 767 (4th Cir. 2021), *cert. denied sub nom. Harley v. Garland*, 142 S. Ct. 426 (2021). The court noted that the proper analysis "focused entirely on the statute itself and the evidence addressing statutory purpose and fit," without consideration of "any individual characteristics of the person raising the as-applied challenge." *Id.* at 769. The court explained that consideration of individual characteristics would "create an exception to the statute that does not exist." *Id.* at 770

8

(noting that those seeking relief may pursue a pardon or expungement). Mr. Nutter's challenge falls squarely within this binding precedent, and he presents no factual or legal argument that would support any other analysis. Therefore, the Court finds that his motion to dismiss based on the Second Amendment must be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendant's *Motion to Dismiss* (Document 45) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: May 17, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA